ORAL ARGUMENT NOT YET SCHEDULED

**Nos. 25-1215, 25-1224**

———————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

Jorge Rivera Lujan, et al.,

Petitioners,

v.

Federal Motor Carrier Safety Administration, et al.,

Respondents.

(*caption continued on inside cover*)

———————

On Petitions for Review of a Final Rule of the
Federal Motor Carrier Safety Administration

———————

**REPLY IN SUPPORT OF EMERGENCY MOTION
FOR A STAY PENDING REVIEW**

———————

Teague Paterson
Matthew Blumin
American Federation of
State, County & Municipal
Employees, AFL-CIO
1625 L Street NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

Daniel McNeil
Channing Cooper
American Federation of Teachers
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for All Petitioners
in No. 25-1215*

November 3, 2025

————————————

Martin Luther King, Jr. County,

Petitioner,

v.

Sean P. Duffy, in his official capacity, et al.,

Respondents.

————————————

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................ii

GLOSSARY ...........................................................................................v

INTRODUCTION...................................................................................1

ARGUMENT ........................................................................................1

I.      Petitioners are likely to succeed on the merits. ............................1

        A.      FMCSA lacked good cause to skip notice-and-
                comment rulemaking. .............................................1

        B.      The Rule is arbitrary and capricious. ....................................3

II.     The Rule will cause irreparable harm to Petitioners.....................8

III.    The balance of equities and the public interest favor a
        stay. ..........................................................................................8

IV.     The Court should stay the Rule in its entirety............................10

CONCLUSION .....................................................................................13

CERTIFICATE OF COMPLIANCE.......................................................15

CERTIFICATE OF SERVICE................................................................16

# TABLE OF AUTHORITIES*

**Cases**                                                                                        **Pages**

*Airlines for America v. DOT*,
  110 F.4th 672 (5th Cir. 2024) ............................................................11

*Biden v. Missouri*,
  595 U.S. 87 (2022)..............................................................................2

*Corner Post, Inc. v. Board of Governors of Federal Reserve System*,
  603 U.S. 799 (2024) ..........................................................................11

*Department of Commerce v. New York*,
  588 U.S. 752 (2019)........................................................................4, 5

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)............................................................................6

*Harmon v. Thornburgh*,
  878 F.2d 484 (D.C. Cir. 1989) ..........................................................11

*In re MCP No. 185*,
  2024 WL 3650468 (6th Cir. Aug. 1, 2024) ........................................11

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ..........................................................1

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990).........................................................................11

*Mack Trucks v. EPA*,
  682 F.3d 87 (D.C. Cir. 2012) ..............................................................2

*Michigan v. EPA*,
  576 U.S. 743 (2015)............................................................................7

---

\* Authorities upon which we chiefly rely are marked with asterisks.

* *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance*,
    463 U.S. 29 (1983) ................................................................ 3

*National Lifeline Ass'n v. FCC*,
    921 F.3d 1102 (D.C. Cir. 2019) ........................................ 7

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ................................ 12

* *Sorenson Communications Inc. v. FCC*,
    755 F.3d 702 (D.C. Cir. 2014) ..................................... 1, 3

**Statutes**

5 U.S.C. § 553(b)(B) ............................................................ 1

28 U.S.C. § 2112(a) ............................................................ 12

28 U.S.C. § 2342 ........................................................ 11, 13

**Rules**

Federal Rule of Appellate Procedure 18 ................................ 13

**Regulatory Materials**

49 C.F.R. § 383.72 .............................................................. 3

49 C.F.R. § 383.73(f)(3)(C)(6) ............................................ 13

49 C.F.R. § 383.111 ............................................................ 3

49 C.F.R. § 383.113 ............................................................ 3

49 C.F.R. § 383.133(5) ........................................................ 3

iii

* 90 Fed. Reg. 46509 (2025)................................................ 2, 3, 4, 6, 12, 13

**Other Authorities**

Congressional Research Service, R44849, *H-2A and H-2B Temporary Worker Visas: Policy and Related Issues* (2023), https://www.congress.gov/crs-product/R44849 ......................................6

DHS, *Profiles on Lawful Permanent Residents*, https://ohss.dhs.gov/topics/immigration/lawful-permanent-residents/profiles.....................................................................................5

USCIS, *Frequently Asked Questions*, https://www.uscis.gov/humanitarian/consideration-of-deferred-action-for-childhood-arrivals-daca/frequently-asked-questions#what_is_deferred_action .......................................4

USCIS, *Temporary (Nonimmigrant) Workers*, https://www.uscis.gov/working-in-the-united-states/temporary-nonimmigrant-workers ...........................................................5

USCIS, *E-2 Treaty Investors*, https://www.uscis.gov/working-in-the-united-states/temporary-workers/e-2-treaty-investors...................................................6

# GLOSSARY

APA   Administrative Procedure Act

CDL   Commercial driver's license

FMCSA  Federal Motor Carrier Safety Administration

# INTRODUCTION

Without undertaking notice-and-comment rulemaking, FMCSA issued an Interim Final Rule that categorically excludes many individuals lawfully authorized to work in the United States from obtaining licenses to drive trucks, buses, and other commercial motor vehicles. FMCSA has failed to show good cause for issuing an interim final rule with immediate effect, and its justification for the rule is arbitrary and capricious. The Rule is also causing irreparable harm to Petitioners and to the public. This Court should stay the Rule.

# ARGUMENT

## I.  Petitioners are likely to succeed on the merits.

### A.  FMCSA lacked good cause to skip notice-and-comment rulemaking.

FMCSA issued the Rule with immediate effect, skipping the APA's notice-and-comment requirement. Although it cited the APA's good-cause exception, *see* 5 U.S.C. § 553(b)(B), FMCSA showed no "*emergency*" where complying with the requirement would result in "serious harm." *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014) (quoting *Jifry v. FAA,* 370 F.3d 1174, 1179 (D.C. Cir. 2004)).

FMCSA does not meaningfully contest that the factual evidence it cited does not demonstrate an emergency. And FMCSA has expressly disclaimed "a direct link between immigration status and a driver's ability to safely operate a commercial motor vehicle." Resp. 11. Thus, this case is far afield from *Biden v. Missouri*, 595 U.S. 87 (2022), on which FMCSA relies. There, in support of an interim final rule, the agency made detailed factual findings explaining why making the rule immediately effective would "significantly reduce COVID–19 infections, hospitalizations, and deaths." *Id*. at 96 (citing 86 Fed. Reg. 61555, 61584–86 (Nov. 5, 2021)). By contrast, FMCSA made no detailed factual findings.

FMCSA asserts that abiding by notice-and-comment requirements would "create[e] a foreseeable and concentrated surge in [CDL] applications that would exacerbate the current safety crisis." 90 Fed. Reg. 46509, 46514 (2025). But it concedes that its data is questionable. *See* Resp. 19 n.2. And it ignores Petitioners' point that the previous surge it cites was not caused by notice of the new regulations. Pets. Mot. 22–23.

This Court "ha[s] repeatedly made clear that the good-cause exception is to be narrowly construed and only reluctantly

countenanced." *Mack Trucks v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012).

FMCSA here falls well short of this Court's "meticulous and demanding"

standard. *Sorenson*, 755 F.3d at 706 (citation omitted).

### B.  The Rule is arbitrary and capricious.

**1.** The Rule's restriction of CDL eligibility based on immigration

status lacks "a rational connection" to the facts in the record. *Motor*

*Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

FMCSA "acknowledg[es] that reliable data" showing a relationship

between a driver's "'nation of domicile … and safety outcomes in the

United States' do[] not exist." Resp. 11 (quoting 90 Fed. Reg. at 46520).

And that acknowledged lack of data is unsurprising, because the

requirements for obtaining a CDL are extensive: Applicants must pass

tests, administered in English, 49 C.F.R. § 383.133(5), demonstrating 30

different vehicle inspection, control, and driving skills, *id.* § 383.113; they

must demonstrate their knowledge in "20 general areas," *id.* § 383.111;

and they must consent to alcohol testing, *id.* § 383.72.

**2.** FMCSA states that its justification for the Rule is not

immigration status, but access to driving history. To start, the Rule itself

contradicts the assertion that immigration status is not its focus. *See* 90

Fed. Reg. at 46515 ("This [interim final rule] revises the regulations to focus on lawful immigration status in the United States in certain employment-based nonimmigrant categories."); *id.* at 46523 (defining "[e]vidence of lawful immigration status" to exclude many categories of immigrants lawfully in the United States). *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (rejecting as "contrived" an agency "explanation … that is incongruent with what the record reveals about the agency's priorities and decisionmaking process").

Nonetheless, FMCSA asserts that the categories of people disqualified under the Rule are "unsafe or high-risk drivers," Resp. 10 (quoting 90 Fed. Reg. at 46514), because their driving history is in other countries and thus "largely or entirely unknown," *id.* at 12. The driving histories of Deferred Action for Childhood Arrivals (DACA) recipients, however, are entirely within the United States. To qualify for DACA, a person must have "[co]me to the United States before reaching [their] 16th birthday" and "continuously resided" there.[2] *See, e.g.*, Rivera Lujan Decl. ¶3. Likewise, many other types of immigrants prohibited from

---

[2] USCIS, *Frequently Asked Questions*, https://www.uscis.gov/ humanitarian/consideration-of-deferred-action-for-childhood-arrivals-daca/frequently-asked-questions#what_is_deferred_action.

CDLs under the Rule have established U.S. driving records. *See* Doe Decl. ¶3; Sememovskii Decl. ¶3; Asylum Seeker Advocacy Project et al. Amici Br. 4–10.

Further revealing the "significant mismatch between the decision the [agency] made and the rationale [it] provided," *Dep't of Com.*, 588 U.S. at 783, the Rule leaves in place CDLs for various categories of people whose driving history may not be available—such as lawful permanent residents.[3] And the Rule allows people with H-2A or H-2B visas to obtain CDLs, although they are unlikely to have domestic driving records because those visa categories are for workers recruited for temporary U.S. jobs.[4] FMCSA responds that its driving-history concern is "ameliorate[d]" for H-2A, H-2B, and E-2 visa holders because sponsoring employers have "incentives" to screen them. Resp. 11. FMCSA, however,

---

[3] In fiscal year 2023, thousands of people in "production, transportation, and material moving occupations" in other countries became lawful permanent residents. *See* DHS, *Profiles on Lawful Permanent Residents*, https://ohss.dhs.gov/topics/immigration/lawful-permanent-residents/profiles (compiling statistics by country of birth and occupation).

[4] *See* USCIS, *Temporary (Nonimmigrant) Workers*, https://www.uscis.gov/working-in-the-united-states/temporary-nonimmigrant-workers.

offers no factual support showing that E-2 visas, which are issued to people investing a substantial amount of money in the United States,[5] are sponsored by employers who screen for driving history. In addition, the H-2B and H-2A visa programs do not require employers to obtain the driving records for the workers they seek to hire.[6] And FMCSA fails to explain why employers who hire other drivers have less incentive to hire safe drivers—particularly public employers such as democratically accountable state and local governments.

**3.** FMCSA does not seriously contest that it failed to account for the "serious reliance interests," *FCC v. Fox Tele. Stations, Inc.*, 556 U.S. 502, 515 (2009), of the thousands of people who will lose their livelihoods because of the Rule. Instead, it blithely offers that these 200,000 people can find other employment with "some de minimis costs." Resp. 14 (quoting 90 Fed. Reg. at 46520). But FMCSA offers no factual evidence to support that proposition. *See* 90 Fed. Reg. at 46520. And it ignores the

---

[5] USCIS, *E-2 Treaty Investors*, https://www.uscis.gov/working-in-the-united-states/temporary-workers/e-2-treaty-investors.

[6] *See* Cong. Research Serv., R44849, *H-2A and H-2B Temporary Worker Visas: Policy & Related Issues* (2023), https://www.congress.gov/crs-product/R44849 (collecting statutory and regulatory requirements).

financial and emotional toll on these individuals and their families. *See* Semenonvskii Decl. ¶¶10–11; Doe Decl. ¶6; Asylum Seeker Advocacy Project Amici Br. 4–10. FMCSA's failure to weigh the interests of these drivers and consider alternatives to account for their interests is yet another reason why the Rule is arbitrary and capricious. *See Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1114 (D.C. Cir. 2019).

**4.** FMCSA also failed to consider that the Rule will harm public safety. *Cf. Michigan v. EPA*, 576 U.S. 743, 753 (2015) ("[R]easonable regulation ordinarily requires paying attention to the advantages *and* the disadvantages of agency decisions."). By reducing the pool of available CDL drivers, the Rule will "curtail[] local government services," including those that make roads safer, and will harm people's safety by delaying or limiting those critical services. Local Gov'ts Amici Br. 14; *see id.* at 5–7, 10–13; Sforza Decl. ¶12. For example, fewer workers available to repair or maintain roads results in more dangerous driving conditions and longer delays for emergency services. Local Gov'ts Amici Br. 12–13. A depleted workforce also means longer hours for CDL drivers who remain on the roads, predictably causing driver fatigue and thus harming safety for everyone on the road. *Id.*

7

## II.    The Rule will cause irreparable harm to Petitioners.

FMCSA does not dispute that the Rule is irreparably harming Petitioners. *See* Resp. 22. Nor could it. Petitioners Rivera Lujan and Semenovskii are faced with imminent job loss, threatening their ability to provide for their families and pay for housing and basic necessities. Rivera Lujan Decl. ¶7; Semenovskii Decl. ¶¶6–8. Likewise, AFSCME's and AFT's members risk job loss, inability to pay for basic necessities, and loss of health insurance. Sforza Decl. ¶¶7–11; Doe Decl. ¶6; Underwood Decl. ¶9.

## III.    The balance of equities and the public interest favor a stay.

**A.** Absent a stay, the Rule, issued without notice and put into immediate effect, will promptly harm thousands of individual drivers, their families, and the public. Thousands of individuals lawfully working in the United States will lose their livelihoods and their ability to provide for their families. *See, e.g.*, Pets. Mot. 26–28 & nn.11–13; Asylum Seeker Advocacy Project Amici Br. 4–10. In addition, forcing 200,000 drivers to exit the market will exacerbate truck-driver shortages and "will almost certainly disrupt supply chains on a scale similar to the workforce shortages experienced in the aftermath of the pandemic." Local Gov'ts

Amici Br. 10–11; *see id.* at 11 (citing an American Trucking Association report noting a shortage of 80,000 drivers in 2021 and estimating a shortage of 160,000 drivers by 2030). Additionally, "[a] number of critical local government services depend upon licensed commercial motor vehicle drivers"—such as the operation of transit systems and school transportation, maintenance of public roads, provision of public utilities, and response to natural disasters. *Id.* at 4. "By immediately reducing the number of drivers, the Rule will "disrupt[] and curtail[]" these essential public services. *Id.* at 5; *see id.* at 5–7. Although FMCSA dismisses such public impacts as "speculation about third-party decisionmaking," Resp. 23, it is hardly speculative that cutting the supply of CDL drivers in a market already experiencing shortages will worsen existing problems. *See* Local Gov'ts Amici Br. 7–8.

**B.** FMCSA offers two points in response. Neither tips the balance.

First, FMCSA asserts that a stay would cause it "per se irreparable harm" by prohibiting it from ensuring safe operation of commercial motor vehicles. Resp. 21. But FMCSA has not shown that the Rule will advance safety, and it has acknowledged that it lacks data to do so. *See id.* at 11. And if delay in implementing an agency's policy choice justified making

9

a rule immediately effective, FMCSA could issue an immediately effective rule interim final or direct to final rule in every instance, making the requirement of notice-and-comment rulemaking entirely optional.

Second, FMCSA claims that a stay would deprive other drivers "who use the highways" of the "Rule's indirect protections." *Id*. at 21. Although it does not specify, it presumably is referring to safety. Putting aside that many CDL holders do not drive on highways, *see* Local Gov'ts Amici Br. 4, FMCSA again forgets that it has not shown a connection between immigration status and safe driving. And to the extent that FMCSA ties this argument to a concern about a surge in applications, that concern is misplaced. Again, FMCSA fails to address Petitioners' response on this point. *See* Pets. Mot. 22–23. The illusive "indirect protections" thus do not outweigh the public interest in staying the Rule.

## IV.   The Court should stay the Rule in its entirety.

FMCSA does not contend that the Court lacks authority to stay the Rule in its entirety. It suggests, though, that the Court, in its "discretion," Resp. 25, stay the Rule only as to Petitioners, only as to a category of impacted drivers, or only in part. A narrower stay would be

10

impracticable, contrary to the public interest, and spur numerous additional duplicative petitions for review in this Court.

The Hobbs Act authorizes the Court to act on a "rule" or "regulation," including to "suspend" a rule, "in whole or in part." 28 U.S.C. § 2342. Thus, when the Court "determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990) (stating that final agency action "can of course be challenged under the APA by a person adversely affected—and the entire [program] insofar as the content of that particular action is concerned, would thereby be affected").

The same applies at the stay stage. *See In re MCP No. 185*, 2024 WL 3650468, at *1 (6th Cir. Aug. 1, 2024) (noting that the court of appeals stayed a rule as requested by "several broadband providers"); *Airlines for Am. v. DOT*, 110 F.4th 672, 674 (5th Cir. 2024) (staying a rule as requested by "[s]everal airlines and airline associations").

11

Notably, FMCSA does not specify how a narrow stay could feasibly be accomplished—and for good reason, because attempting to apply the Rule to some but not all affected drivers, in some but not all counties, would pose intractable practical problems. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019). And its justification for the Rule and for making it immediately effective without prior notice, is uniformly inadequate. Nothing in the Rule suggests that the agency has good cause to skip notice-and-comment rulemaking with respect to any category of affected drivers.

Further, a party-specific stay would prompt substantial duplicative litigation. Approximately 200,000 individuals are affected by the Rule, 90 Fed. Reg. at 46519, and more than 4,000 have already filed comments.[7] Meanwhile, the statute of limitations for challenging the Rule is still running, and any additional petitions for review will be consolidated with the pending petitions. *See* 28 U.S.C. § 2112(a). A stay limited to the current Petitioners and members of AFSCME and AFT (assuming one could be crafted) would encourage thousands of other individuals, unions, and municipalities to file petitions in this Court,

---

[7] https://www.regulations.gov/docket/FMCSA-2025-0622.

each with its own (duplicative) motion to stay. FMCSA offers no authority supporting that result. And the Hobbs Act—and the uniformity interest underlying it—counsels strongly against it.

FMCSA suggests that the Court stay only parts of the Rule. With the exception of the provision requiring in-person renewal, 90 Fed. Reg. at 46525 (49 C.F.R. § 383.73(f)(3)(C)(6)), however, all of the Rule's provisions operate to restrict CDL eligibility based on immigration status. The relevant factors thus strongly support a stay of the Rule as a whole.

Finally, FMCSA incorrectly describes Petitioners' motion as a motion to stay "the effective date." Regardless of whether such a motion would be appropriate, Petitioners have asked this Court to "stay the Rule pending its review." Pets. Mot. 2; *see id.* at 9. The Court has authority to do so. *See* 28 U.S.C. § 2342; Fed. R. App. P. 18.

## CONCLUSION

The Court should grant Petitioners' motion for a stay. In addition, the Court should order FMCSA to promptly inform state departments of motor vehicles that the Rule has been stayed.

Respectfully submitted,

Teague Paterson
Matthew Blumin
American Federation of
State, County & Municipal
Employees, AFL-CIO
(AFSCME)
1625 L Street NW
Washington, DC 20036
(202) 775-5900

*Counsel for Petitioner AFSCME*

/s/ *Wendy Liu*
Wendy Liu
Cormac Early
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
wliu@citizen.org

*Counsel for All Petitioners in
No. 25-1215*

Daniel McNeil
Channing Cooper
American Federation of Teachers
AFL-CIO (AFT)
555 New Jersey Avenue NW
Washington, DC 20001
(202) 879-4400

*Counsel for Petitioner AFT*

November 3, 2025

14

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by the Federal Rules of Appellate Procedure and this Court's rules, this document contains 2,521 words, as calculated by Microsoft Word 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word 365.

/s/ *Wendy Liu*
Wendy Liu

## CERTIFICATE OF SERVICE

I hereby certify that, on November 3, 2025, the foregoing document was served through the Court's ECF system on counsel for all parties.

/s/ *Wendy Liu*
Wendy Liu

16