---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

JORGE RIVERA LUJAN; ALEKSEI SEMENOVSKII; AMERICAN
FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES; AFL-
CIO; and AMERICAN FEDERATION OF TEACHERS,
*Petitioners*,

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION; UNITED
STATES DEPARTMENT OF TRANSPORTATION; and THE UNITED
STATES,
*Respondents.*

---

MARTIN LUTHER KING, JR. COUNTY,
*Petitioner*,

v.

SEAN DUFFY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S.
DEPARTMENT OF TRANSPORTATION; THE U.S. DEPARTMENT OF
TRANSPORTATION; THE FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION; and THE UNITED STATES,
*Respondents.*

---

On Petition for Review of the United States Department of Transportation's
Federal Motor Carrier Safety Administration's Interim Final Rule "Restoring
Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses"

---

# BRIEF OF LOCAL GOVERNMENTS AND LOCAL GOVERNMENT LEADERS AS AMICI CURIAE IN SUPPORT OF PETITIONERS' MOTIONS FOR STAY PENDING JUDICIAL REVIEW

ELENA GOLDSTEIN
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 322-1959
egoldstein@democracyforward.org

TOBY MERRILL
Public Rights Project
49 43rd Street, #115
Oakland, CA 94609
(707) 297-3837
toby@publicrightsproject.org

*Counsel for Amici Curiae*

SUBASH IYER
Kaplan Kirsch LLP
1500 Broadway, Suite 1605
New York, NY 10036
(929) 458-6975
siyer@kaplankirsch.com

JOHN E. PUTNAM
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7010
jputnam@kaplankirsch.com

CAITLIN MCCUSKER
CAROLINE G. JASCHKE
1634 I Street, NW, Suite 300
Washington, D.C. 20006
(202) 955-5600
cmcusker@kaplankirsch.com
cjaschke@kaplankirsch.com

*Counsel for Local Government Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and Amici**. All parties appearing in this Court are named in the two consolidated petitions for review, except for *amici* in this brief and any other *amici* who have not yet entered an appearance.

**B. Rulings Under Review**. Petitioners identified the challenged action in their petitions for review.

**C. Related Cases**. This case has not previously been before this Court, and counsel is not aware of any related cases within the meaning of Circuit Rule 28(a)(1)(C) other than the two consolidated petitions for review.

## **RULE 29 CERTIFICATION**

Pursuant to Circuit Rule 29(b), *amici* state that all parties have consented to the filing of this *amicus* brief. *Amici* are aware of one other *amicus* brief that will be filed by recipients of immigration authorization, including under Deferred Action for Childhood Arrivals, who are impacted by the challenged action. Pursuant to Circuit Rule 29(d), *amici* certify that joinder in a single brief with other *amici* would be impracticable because local governments and their officials have interests that are distinct from the individuals with a particular immigration status. To *amici*'s knowledge, this is the only *amicus* brief that will address the impact of this challenged action on localities.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... vi

INTEREST OF AMICI CURIAE ...........................................................................1

SUMMARY OF ARGUMENT ...............................................................................3

ARGUMENT ..........................................................................................................4

     I.     The Interim Final Rule Harms the Ability of Local Governments to Provide Essential Services. ..................................................................4

     II.    The Interim Final Rule Will Diminish Road Safety. ..........................11

CONCLUSION .....................................................................................................13

CERTIFICATE OF COMPLIANCE .....................................................................18

CERTIFICATE OF SERVICE ..............................................................................19

# TABLE OF AUTHORITIES

**Regulatory Materials**

U.S. Dep't of Transp., Interim Final Rule, "Restoring Integrity to the
Issuance of Non-Domiciled Commercial Drivers Licenses
(CDL)," 90 Fed. Reg. 46509 (Sept. 29, 2025) ("Interim Final
Rule") ........................................................................... 3, 5, 10, 11

**Court Rules**

D.C. Cir. Rule 18(a)(1) ...........................................................................4

D.C. Cir. *Handbook of Practice and Internal Procedures* (2025) ......................4

Fed. R. App. P. 29(a)(4)(E).....................................................................1

**Other Authorities**

Alicia Neaves, *The Unseen First Responders: Tow Crews Fuel Hope
After Hill Country Floods*, Kens5 (July 10, 2025 at 10:23 PM
CDT), https://www.kens5.com/article/news/state/texas-
news/texas-flood/texas-floods-first-responders-tow-crews-fuel-
hope-hill-country/273-a2f3f29b-b69f-4734-830a-48633149e274 .......... 6, 7

Am. Pub. Transp. Ass'n, *Transit Workforce Shortage* (2023),
https://www.apta.com/wp-content/uploads/APTA-Workforce-
Shortage-Synthesis-Report-03.2023.pdf................................................. 7, 9

Bob Costello & Alan Karickhoff, Am. Trucking Ass'n, *Truck Driver
Shortage Analysis* 4 (2019),
https://www.trucking.org/sites/default/files/2020-
01/ATAs%20Driver%20Shortage%20Report%202019%20with
%20cover.pdf ...............................................................................9

Catie Edmonson, *'What Does a Trucker Look Like?' It's Changing,
Amid a Big Shortage*, N.Y. Times (July 28, 2018),
https://www.nytimes.com/2018/07/28/us/politics/trump-truck-
driver-shortage.html .......................................................... 9, 10

Christine Brittle & Julie Van Keuren, Am. Pub. Transp. Ass'n, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators* (2024), https://www.apta.com/wp-content/uploads/APTA-Impact-of-CDL-Under-the-Hood-Testing-Requirement-Nov-2024.pdf .............. 8, 13

Cindy Long, *School Bus Driver Shortage Persists*, neaToday (Dec. 14, 2023), https://www.nea.org/nea-today/all-news-articles/school-bus-driver-shortage-persists ................................6

Fed. Highway Admin., U.S. Dep't of Transp., FHWA-SA-21-033, *Local Road Safety Plans*, https://highways.dot.gov/sites/fhwa.dot.gov/files/Local%20Road%20Safety%20Plans_508.pdf ................................ 12

Hugh Cameron, *America Doesn't Have Enough Truck Drivers*, Newsweek (July 10, 2025, at 02:01 PM ET), https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123 ................................9

Hugh Cameron, *America's Trucking Industry is in Deep Trouble*, Newsweek (Oct. 13, 2025, at 5:40 AM ET), https://www.newsweek.com/us-trucking-industry-deep-trouble-10861497 ................................ 11

Jack Kelly, *There Is A Massive Trucker Shortage Causing Supply Chain Disruptions And High Inflation*, Forbes (Jan. 12, 2022, at 11:51 AM ET), https://www.forbes.com/sites/jackkelly/2022/01/12/there-is-a-massive-trucker-shortage-causing-supply-chain-disruptions-and-high-inflation ................................ 10

Jed Herrmann & Teryn Zmuda, *Tough Challenges for Counties in a New Era of Fiscal Federalism*, Governing (Aug. 15, 2025), https://www.governing.com/management-and-administration/tough-challenges-for-counties-in-a-new-era-of-fiscal-federalism ................................9

Laura Bliss, *There's a Bus Driver Shortage. And No Wonder*, Bloomberg (June 28, 2018, at 8:00 AM ET), https://www.bloomberg.com/news/articles/2018-06-28/there-s-a-bus-driver-shortage-and-no-wonder..........................................5

Madeleine Ngo & Ana Swanson, *The Biggest Kink in America's Supply Chain: Not Enough Truckers*, N.Y. Times (Nov. 9, 2021),

https://www.nytimes.com/2021/11/09/us/politics/trucker-shortage-supply-chain.html .................................................................. 9, 10

Mark Heinz, *'Logistical Nightmare': Short on Plow Drivers & Hammered By Weather, WYDOT Had Harrowing Winter*, Cowboy State Daily (May 6, 2023), https://cowboystatedaily.com/2023/05/06/a-logistical-nightmare-short-on-plow-drivers-and-hammered-by-weather-wydot-had-a-harrowing-winter.................................................................. 8, 12

Matthew Dickens, Am. Pub. Transp. Ass'n, Policy Brief: *Workforce Shortages Impacting Public Transportation Recovery* (2022), https://www.apta.com/wp-content/uploads/APTA-SURVEY-BRIEF-Workforce-Shortages-March-2022.pdf ................................. 5, 7, 8

Michelle Bandur, *'It's a Hiring Problem': Tahoe Basin Resident Fear Snow Plow Driver Shortage Will Leave Them Stranded at Home*, KCRA3 (Nov. 12, 2024, at 7:12 PM ET), https://www.kcra.com/article/tahoe-basin-snow-plow-driver-shortage/62888030 ................................................................... 12

Peter S. Goodman, *The Real Reason America Doesn't Have Enough Truck Drivers*, N.Y. Times (Feb. 9, 2022), https://www.nytimes.com/2022/02/09/business/truck-driver-shortage.html ............................................................................ 10

Press Release, Am. Trucking Ass'n, ATA Chief Economist Pegs Driver Shortage at Historic High (Oct. 25, 2021), https://www.trucking.org/news-insights/ata-chief-economist-pegs-driver-shortage-historic-high ............................................................ 11

U.S. Dep't of Transp. Climate Change Center, *Climate Strategies that Work: InterCity Buses* (2025), https://www.transportation.gov/sites/dot.gov/files/2024-10/Intercity%20Buses%20PDF%20%282%29.pdf ....................................6

U.S. Dep't of Transp. Fed. Highway Admin., *Resources for Commercial Vehicles Involved in Emergency Response* (2021), https://ops.fhwa.dot.gov/publications/fhwahop21009/fhwahop21009.pdf ..........................................................................................6

<u>**INTEREST OF AMICI CURIAE**[1]</u>

*Amici curiae* are local governments and officials from across the Nation. Their municipalities and counties differ in size, demographics, and policy priorities. Local governments also differ in the ways in which they provide transportation-related services—including public transportation, school buses, and critical safety-related services like highway maintenance and snow plowing—to their communities. Some provide those services directly; others provide them indirectly, as funders or members of public authorities; yet all rely on these services as part of a broader network of public services. Notwithstanding these variations, all local governments share a fundamental interest in providing effective and reliable public services to their constituents and keeping their communities safe, including by ensuring road safety. That is especially true for local governments like *amici*, who often act as first responders to vehicular accidents and have unique interests in protecting their residents.

*Amici* submit this brief in support of Petitioners' motions for stay pending judicial review. The challenged Interim Final Rule will harm local governments' ability to deliver essential services. Moreover, despite the rule's claims of safety

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici* certify that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund this brief, and no person other than amicus, its members, and its counsel contributed money intended to fund this brief. All parties have consented to the filing of this brief.

benefits, the Interim Final Rule in fact will diminish road safety in several key respects. *Amici* submit this brief to highlight that the public interest accordingly supports issuance of a stay pending review by this Court.

## SUMMARY OF ARGUMENT

Local governments provide a wide range of services and assurances to their constituents. Two of the most essential of these are reliable transportation and safe roads. The U.S. Department of Transportation's Federal Motor Carrier Safety Administration's Interim Final Rule entitled "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)," 90 Fed. Reg. 46509 (Sept. 29, 2025) (to be codified at 49 C.F.R. pts. 383–384) ("Interim Final Rule") impedes these commitments. It restricts the issuance of commercial driver's licenses to certain classes of noncitizens. In doing so, it immediately decreases the number of drivers who can provide essential services to local communities and limits the pool of drivers going forward. Of the estimated 200,000 non-domiciled commercial driver's license holders in the country, the Federal Motor Carrier Safety Administration estimates 194,000 will exit the freight market alone because they lose their commercial driver's licenses. *Id.* at 45619. That means approximately five percent of all active commercial driver's license holders, based on 2024 numbers, risk loss of their licenses. *Id.* at 46520. And, by narrowing the future pool of commercial driver's license holders, local governments will struggle to fill these gaps and other vacancies that will open up through attrition and growth in needed services. Without sufficient licensed drivers, local governments will be forced to cut a variety of services, which not only disrupts the lives of residents but also

necessarily decreases road safety. Local governments like *amici* are already experiencing these impacts, which will increase without immediate relief. The public interest thus weighs strongly in favor of the motions to stay the Interim Final Rule pending this Court's review.

**ARGUMENT**

A motion for stay or emergency relief pending review of an agency order must address four factors: "(i) the likelihood that the moving party will prevail on the merits; (ii) the prospect of irreparable injury to the moving party if relief is withheld; (iii) the possibility of harm to other parties if relief is granted; and (iv) the public interest." D.C. Cir. Rule 18(a)(1); *see also* D.C. Cir. *Handbook of Practice and Internal Procedures* 33 (2025). *Amici* submit this brief to address the fourth factor: the public interest.

## I. The Interim Final Rule Harms the Ability of Local Governments to Provide Essential Services.

A number of critical local government services depend upon licensed commercial motor vehicle drivers. These include public transportation; school buses; maintenance and repairs of highways and other public roads; clearing of roadways during inclement weather; providing gas, electricity, and other utilities to the public; and responding to disasters by proactively mitigating their risks or recovering from their consequences. Drivers are required to have valid commercial driver's licenses to operate the commercial motor vehicles necessary to provide

these services. Prior to issuance of the Interim Final Rule, certain noncitizens could and did obtain commercial driver's licenses. Nearly 200,000 of these individuals are expected to lose those licenses by virtue of the Interim Final Rule. 90 Fed. Reg. at 45619. Such individuals can no longer perform their essential jobs. Further, it will be more difficult to replace drivers who lose their license or fill future vacancies, because the Interim Final Rule will deplete the pool of potential replacement candidates.

Fewer licensed commercial drivers and a smaller pool of potential drivers will translate directly into disrupted and curtailed government services. For example, without sufficient drivers, transit systems, which are already facing substantial driver shortages and serious fiscal constraints, will be forced to further cut back on services, whether by limiting hours or frequency of service or suspending certain service routes.[2] Driver shortage impacts are not limited to large, urban transit systems, but also impact rural communities, where motorcoaches can play a role in bridging

---

[2] *See, e.g.*, Matthew Dickens, Am. Pub. Transp. Ass'n, Policy Brief: *Workforce Shortages Impacting Public Transportation Recovery* 3 (2022), https://www.apta.com/wp-content/uploads/APTA-SURVEY-BRIEF-Workforce-Shortages-March-2022.pdf (showing 71% of 117 agencies delayed or cut services due to staffing shortages); Laura Bliss, *There's a Bus Driver Shortage. And No Wonder*, Bloomberg (June 28, 2018, at 8:00 AM ET), https://www.bloomberg.com/news/articles/2018-06-28/there-s-a-bus-driver-shortage-and-no-wonder (noting significant shortages in Seattle, New Jersey, Denver, Los Angeles, Toledo, Gainesville, and New Hampshire, many of them leading to delays and cuts in service).

service gaps.[3] Having fewer school bus operators similarly raises the likelihood of reduced or less reliable service or entire cuts to bus routes, impacting school community members, including students, parents, and teachers, and reducing access to critical school resources, such as school meals and extracurricular programs.[4] Other local government services that require workers who are licensed to operate commercial motor vehicles—including maintaining and repairing utilities, highways, and other public roads; clearing roads in the event of snow and ice; and providing emergency services during natural disasters—will suffer. Similarly, local governments and associated entities will be hampered in their ability to prepare for and recover from natural disasters, like Hurricane Helene, the Guadalupe River floods, tornado outbreaks in the South, or the Los Angeles wildfires.[5] Thinning

---

[3] U.S. Dep't of Transp. Climate Change Center, *Climate Strategies that Work: InterCity Buses* 3 (2025), https://www.transportation.gov/sites/dot.gov/files/2024-10/Intercity%20Buses%20PDF%20%282%29.pdf (bus services "connect rural residents to major urban centers, offering connections to essential services and economic opportunities").

[4] *See* Cindy Long, *School Bus Driver Shortage Persists*, neaToday (Dec. 14, 2023), https://www.nea.org/nea-today/all-news-articles/school-bus-driver-shortage-persists.

[5] *See* U.S. Dep't of Transp. Fed. Highway Admin., *Resources for Commercial Vehicles Involved in Emergency Response* 1 (2021), https://ops.fhwa.dot.gov/publications/fhwahop21009/fhwahop21009.pdf ("Responding to disasters relies heavily on the timely receipt of equipment and workers from other States, such as when electric utilities send trucks, equipment, and staff to restore energy infrastructure after a hurricane."); Alicia Neaves, *The Unseen First Responders: Tow Crews Fuel Hope After Hill Country Floods*, Kens5 (July 10, 2025 at 10:23 PM CDT), https://www.kens5.com/article/news/state/texas-

forests; protecting coastlines; supplying food, fuel, and water to residents who have lost their homes; clearing flood zones; and ensuring road access for other emergency responders involve heavy hauling, which requires heavy trucks and commercially licensed drivers.

These consequences are not theoretical. The Nation has experienced recent driver workforce shortages that illustrate the impact of insufficient drivers on local government services. For example, a 2022 survey from the American Public Transportation Association found that 96 percent of transit agencies faced workforce shortages with 84 percent of agencies reporting impacts on service.[6] These impacts hit bus operations most severely, with 94 percent of agencies reporting that bus operator positions were the most or second-most challenging to fill.[7] Due to these workforce shortages, public transit agencies reported cutting, delaying, and cancelling transit service.[8] One-third of agencies stated that these impacts to their

---

news/texas-flood/texas-floods-first-responders-tow-crews-fuel-hope-hill-country/273-a2f3f29b-b69f-4734-830a-48633149e274 (local tow truck drivers became an "essential force" in the Guadalupe flood response—"clearing the way for emergency crews, recovering submerged vehicles and delivering life-saving supplies").

[6] Am. Pub. Transp. Ass'n, *Transit Workforce Shortage* 1 (2023), https://www.apta.com/wp-content/uploads/APTA-Workforce-Shortage-Synthesis-Report-03.2023.pdf.

[7] *Dickens*, *supra* note 2, at 2.

[8] *Id.*

services were having a negative effect on the reliability of their service.[9] This unreliability then disrupts the lives of people who depend on these services to get to their jobs, school, healthcare appointments, and visit friends and family.

Local governments also may face broader economic effects due to the Interim Final Rule. For example, governments typically spend money to recruit and train employees. Funds already spent on drivers who are stripped of their licenses by the Interim Final Rule cannot be recouped. The need to replace these drivers, thereby spending additional funds on recruitment and training, further compounds these costs. Likewise, with a limited pool of licensed drivers, localities may need to address critical needs by relying on increased overtime or temporarily relocating workers, which increases the cost of services.[10]

Local governments also face unique challenges in responding to such shortages. For example, applicable laws, regulations, or policies often impose

---

[9] *Id.*

[10] *See, e.g.*, Christine Brittle & Julie Van Keuren, Am. Pub. Transp. Ass'n, *Impact of CDL Under-the-Hood Testing Requirement on Public Transit Agencies' Ability to Hire Bus Operators* 3 (2024), https://www.apta.com/wp-content/uploads/APTA-Impact-of-CDL-Under-the-Hood-Testing-Requirement-Nov-2024.pdf (transit agencies report that worker shortages increase the amount of overtime the agencies pay); Mark Heinz, *'Logistical Nightmare': Short on Plow Drivers & Hammered By Weather, WYDOT Had Harrowing Winter*, Cowboy State Daily (May 6, 2023), https://cowboystatedaily.com/2023/05/06/a-logistical-nightmare-short-on-plow-drivers-and-hammered-by-weather-wydot-had-a-harrowing-winter/ (plow operator shortages caused extra work and wear and tear on equipment that put the Wyoming Department of Transportation $9.7 million over its expected budget).

substantial training requirements, lengthening the time and increasing the cost of replacing drivers.[11] Moreover, because most operate on fixed budgets, local governments are limited in their ability to address impacts through increased expenditures.[12] They may not be able to, for example, raise salaries, offer recruitment bonuses, or support additional overtime pay, forcing cuts to critical services.

Finally, the effects on local communities are not limited to diminished government services, as local governments depend on the transportation of goods into their communities to perform many of their vital functions. The Nation's supply chain depends in large part on truck drivers, as became evident in recent years when the country experienced truck driver shortages.[13] The Interim Final Rule will almost

---

[11] *See* Am. Pub. Transp. Ass'n, *supra* note 6, at 2, 18–22; Bob Costello & Alan Karickhoff, Am. Trucking Ass'n, *Truck Driver Shortage Analysis* 4 (2019), https://www.trucking.org/sites/default/files/2020-01/ATAs%20Driver%20Shortage%20Report%202019%20with%20cover.pdf.

[12] Jed Herrmann & Teryn Zmuda, *Tough Challenges for Counties in a New Era of Fiscal Federalism*, Governing (Aug. 15, 2025), https://www.governing.com/management-and-administration/tough-challenges-for-counties-in-a-new-era-of-fiscal-federalism.

[13] Hugh Cameron, *America Doesn't Have Enough Truck Drivers*, Newsweek (July 10, 2025, at 02:01 PM ET), https://www.newsweek.com/america-trucking-shortage-logistics-supply-chain-2097123; Madeleine Ngo & Ana Swanson, *The Biggest Kink in America's Supply Chain: Not Enough Truckers*, N.Y. Times (Nov. 9, 2021), https://www.nytimes.com/2021/11/09/us/politics/trucker-shortage-supply-chain.html; Costello & Karickoff, *supra* note 11, at 1; Catie Edmonson, *'What Does a Trucker Look Like?' It's Changing, Amid a Big Shortage*, N.Y.

certainly disrupt supply chains, which will further impede local governments' ability to deliver vital services. Without an adequate trucking workforce, local governments will struggle with shortages of materials to support construction projects, increased port congestion, and delays in procurement of critical goods.[14] More than just impacting the delivery of goods, driver shortages can also lead to increased rates for freight operations and higher prices, which will particularly affect cash-strapped local governments.[15]

The Interim Final Rule will exacerbate freight driver shortages that are already likely to strain the supply chain. With nearly 200,000 current non-domiciled commercial driver's license holders exiting the freight market as a result of the Interim Final Rule, 90 Fed. Reg. at 46519, the Interim Final Rule will almost certainly disrupt supply chains on a scale similar to the workforce shortages

---

Times (July 28, 2018), https://www.nytimes.com/2018/07/28/us/politics/trump-truck-driver-shortage.html.

[14] Peter S. Goodman, *The Real Reason America Doesn't Have Enough Truck Drivers*, N.Y. Times (Feb. 9, 2022), https://www.nytimes.com/2022/02/09/business/truck-driver-shortage.html ("[A] shortage of truck drivers is frequently cited as an explanation for shortages of many other things — from construction supplies to electronics to clothing."); Jack Kelly, *There Is A Massive Trucker Shortage Causing Supply Chain Disruptions And High Inflation*, Forbes (Jan. 12, 2022, at 11:51 AM ET), https://www.forbes.com/sites/jackkelly/2022/01/ 12/there-is-a-massive-trucker-shortage-causing-supply-chain-disruptions-and-high-inflation/; Ngo & Swanson, *supra* note 13.

[15] Edmonson, *supra* note 13.

experienced in the aftermath of the pandemic. In 2021, the American Trucking Association reported that the industry was short by 80,000 drivers, an all-time high for the industry.[16] The American Trucking Association further estimated that shortage could double to 160,000 in 2030.[17] Already, 69 percent of freight businesses are struggling to meet demand as a result of these shortages,[18] and "to keep up with demand over the next decade, trucking will need to recruit nearly one million new drivers."[19] The Interim Final Rule will instead narrow the available pool of drivers.

## II.    The Interim Final Rule Will Diminish Road Safety.

Although the Federal Motor Carrier Safety Administration claims that the Interim Final Rule will improve safety, it will actually harm safety in critical ways. As the Interim Final Rule itself acknowledges, there is insufficient evidence "to reliably demonstrate a measurable empirical relationship between the nation of domicile for a [commercial driver's license] driver and safety outcomes." 90 Fed. Reg. at 46520. By contrast, the diminishment of local government services that promote safety will translate into increased risk of harm to the public.

---

[16] Press Release, Am. Trucking Ass'n, ATA Chief Economist Pegs Driver Shortage at Historic High (Oct. 25, 2021), https://www.trucking.org/news-insights/ata-chief-economist-pegs-driver-shortage-historic-high.

[17] *Id.*

[18] Hugh Cameron, *America's Trucking Industry is in Deep Trouble*, Newsweek (Oct. 13, 2025, at 5:40 AM ET), https://www.newsweek.com/us-trucking-industry-deep-trouble-10861497.

[19] Press Release, Am. Trucking Ass'n, *supra* note 16.

As discussed above, local governments rely on employees with commercial driver's licenses to provide services designed to improve the safety of public roads. Maintenance of local roads, in particular, is critical for overall roadway safety because, as the Federal Highway Administration has noted, although "local roads are less traveled than State highways, they have a much higher rate of fatal and serious injury crashes."[20] Local governments also provide a range of services, including regular repair and maintenance of roads and improvement of road design to enhance safety.

Local government safety services also include essential seasonal services like clearing roadways of snow and ice as well as natural disaster response. Snow and ice clearing services ensure safe and reliable access to roads for emergency services and the public alike, which further promotes safety. By way of illustration, a local government facing a shortage of snowplow operators may be forced to close roads entirely until they can be plowed.[21] Doing so risks stranding people at home and delaying emergency response services from reaching people in need.[22] Every minute

---

[20] Fed. Highway Admin., U.S. Dep't of Transp., FHWA-SA-21-033, *Local Road Safety Plans*,
https://highways.dot.gov/sites/fhwa.dot.gov/files/Local%20Road%20Safety%20Pl
ans_508.pdf.

[21] Heinz, *supra* note 10.

[22] *See* Michelle Bandur, *'It's a Hiring Problem': Tahoe Basin Resident Fear Snow Plow Driver Shortage Will Leave Them Stranded at Home*, KCRA3 (Nov. 12,

counts for health, fire, and police emergencies, and less snow and ice removal capacity will increase those minutes at the cost of human lives. Likewise, a smaller pool of commercially licensed drivers risks community safety by limiting local governments' efforts to mitigate natural disasters in advance and respond to them when they strike.

Reducing the pool of eligible commercial drivers will directly impact the safety of residents in *amici*'s jurisdictions. The Interim Final Rule decreases the number of drivers available to support these services, resulting in fewer safety efforts and increased risk of harm. Likewise, a depleted workforce increases risk by requiring drivers to work longer or more frequently, which decreases safety due to driver fatigue and can contribute to driver burnout, further exacerbating workforce shortages.[23] Limiting the availability of commercial driver's license holders to perform these safety-critical functions, as the Interim Final Rule does, poses harm to roadway safety.

## <u>CONCLUSION</u>

The undersigned *amici curiae* strongly support efforts to make roads safer for the public and would welcome the opportunity to share their insights on proposals

---

2024, at 7:12 PM ET), https://www.kcra.com/article/tahoe-basin-snow-plow-driver-shortage/62888030.

[23] Brittle & Keuren, *supra* note 10.

aimed at doing so.[24] Unfortunately, the Interim Final Rule does not meet that objective. Rather, it curtails local government services, including those making roads safer. For these reasons, this Court should conclude that the public interest is best served by staying the Interim Final Rule pending judicial review.

Dated: October 29, 2025

Respectfully submitted,

*/s/ Caitlin McCusker*

TOBY MERRILL
Public Rights Project
49 43rd Street, #115
Oakland, CA 94609
(707) 297-3837
toby@publicrightsproject.org

ELENA GOLDSTEIN
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 322-1959
egoldstein@democracyforward.org

*Counsel for Amici Curiae*

CAITLIN MCCUSKER
CAROLINE G. JASCHKE
Kaplan Kirsch LLP
1634 I Street, NW, Suite 300
Washington, D.C. 20006
(202) 955-5600
cmcusker@kaplankirsch.com
cjaschke@kaplankirsch.com

SUBASH IYER
1500 Broadway, Suite 1605
New York, NY 10036
(929) 458-6975
siyer@kaplankirsch.com

JOHN E. PUTNAM
1675 Broadway, Suite 2300
Denver, CO 80202
(303) 825-7010
jputnam@kaplankirsch.com

*Counsel for Local Government Amici Curiae*

---

[24] Notably, by proceeding via Interim Final Rule, the Federal Motor Carrier Safety Administration acted without benefit of public comment.

**ADDITIONAL COUNSEL**

ROBERT MAGEE
Corporation Counsel
24 Eagle Street, Room 106
Albany, NY 12207
*Attorney for the City of Albany, New York*

MEGAN BAYER
City Solicitor
795 Massachusetts Avenue
Cambridge, MA 02139
*Attorney for the City of Cambridge, Massachusetts*

JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
*Attorney for Montgomery County, Maryland*

MURIEL GOODE-TRUFANT
Corporation Counsel
100 Church Street
New York, NY 10007
*Counsel for the City of New York, New York*

DAVID CHIU
City Attorney
City Hall Room 234
One Drive Carlton B. Goodlett Place
San Francisco, CA 94102
*Attorney for the City and County of San Francisco, California*

**Appendix A - List of *Amici Curiae***

**Local Governments**

City of Albany, New York

City of Cambridge, Massachusetts

Montgomery County, Maryland

City of New York, New York

City and County of San Francisco, California

**Local Government Leaders**

Celina Benitez
*Mayor, City of Mount Rainier, Maryland*

Jesse Brown
*Councilmember, City of Indianapolis, Indiana*

Chelsea Byers
*Mayor, City of West Hollywood, California*

Chris Canales
*Councilmember, City of El Paso, Texas*

Michael Chameides
*Supervisor, County of Columbia, New York*

John Clark
*Mayor, Town of Ridgway, Colorado*

Alison Coombs
*Councilmember, City of Aurora, Colorado*

Christine Corrado
*Councilmember, Township of Brighton, New York*

Nikki Fortunato Bas
*Supervisor, Alameda County, California*
Brenda Gadd
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Caroline Torosis
*Mayor Pro Tempore, City of Santa Monica, California*

Terry Vo
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Ginny Welsch
*Councilmember, Metropolitan Nashville and Davidson County, Tennessee*

Robin Wilt
*Councilmember, Township of Brighton, New York*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned counsel for *Amici Curiae* certifies that this brief:

(i)      complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 2,785 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1); and

(ii)      complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and is set in Times New Roman font in a size equivalent to 14 points or larger.

Dated: October 29, 2025                    */s/ Caitlin McCusker*
                                                          Caitlin McCusker

**CERTIFICATE OF SERVICE**

The undersigned counsel for *Amici Curiae* certifies that a true and accurate copy of the foregoing Brief was electronically filed with the Court using the CM/ECF system. Service on counsel for all parties will be accomplished through the Court's electronic filing system.

Dated: October 29, 2025          */s/ Caitlin McCusker*
                                             Caitlin McCusker