Case No. 25-1215 (consolidated with No. 25-1224)

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**Jorge Rivera Lujan, et al.,**
Petitioners,

**v.**

**Federal Motor Carrier Safety Administration, et al.,**
Respondents.

On Petition for Review of a Final Rule of the
Federal Motor Carrier Safety Administration

---

**BRIEF OF *AMICI CURIAE* THE SIKH COALITION, THE GURDWARA SAHIB OF STOCKTON, THE JAKARA MOVEMENT, SIKH AMERICAN LEGAL DEFENSE AND EDUCATION FUND, UNITED SIKHS, CALIFORNIA SIKH YOUTH ALLIANCE, AND UMEED-HOPE, IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR A STAY PENDING REVIEW**

---

Sahel K. Sra
Munmeeth Kaur
The Sikh Coalition
165 Broadway, 23rd Floor
New York, NY 10006
Tel: (212) 655-3095

Katherine Zhao
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
Tel: (415) 896-1701

*Counsel for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

## A. Parties and *Amici*

Except for the following, all parties, intervenors, or *amici* appearing in this Court are listed in Petitioners' Motions for an Emergency Stay: *amici curiae* the Sikh Coalition, the Gurdwara Sahib of Stockton, the Jakara Movement, Sikh American Legal Defense and Education Fund (SALDEF), UNITED SIKHS, California Sikh Youth Alliance (CSYA), and Umeed-Hope.

None of amici have any parent corporations and no publicly held company owns 10% or greater ownership in any of amici.

## B. Rulings Under Review

The rule under review is the Federal Motor Carrier Safety Administration's interim final rule entitled "Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)" (Docket No. FMCSA–2025–0622), published in the Federal Register on September 29, 2025 at 90 Fed. Reg. 46509.

## C. Related Cases

This case has not previously been before this Court or any other court. Undersigned counsel is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

**D.      Statutes and Regulations**

All applicable statutes, etc., are contained in the Petitioners' Motions for Emergency Stay.

Dated: October 29, 2025

                                                                    <u>   /s/ Sahel K. Sra</u>
                                                                    Sahel K. Sra

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES.........................................................................ii

GLOSSARY...............................................................................................iv

STATEMENT OF INTEREST.......................................................................v

PRELIMINARY STATEMENT.....................................................................1

ARGUMENT...............................................................................................2

I.   **Petitioners are likely to succeed on the merits of the APA claim because the Rule is arbitrary and capricious**.............................................2

II.  **The balance of equities and the public interest support staying the Rule to protect public safety**………...........................................6

A.  *The Sikh trucker community has become the target of hateful discrimination as a result of the Rule*.....................................6

B.  *The Rule will likely make the roads less safe because of the persistent shortage of drivers in the market*.......................12

CONCLUSION...........................................................................................13

CERTIFICATE OF COMPLIANCE ...........................................................14

CERTIFICATE OF SERVICE ....................................................................15

# TABLE OF AUTHORITIES

**Cases**

*CASA, Inc. v. Noem, 2025* WL 1907378 (D. MD. July 10, 2025) ...........................3

*Fox v. Clinton*, 684 F.3d 67 (D.C. Cir. 2012) ..........................................................2

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983).................................3

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................6

*Oregon State Penitentiary v. Hammer*, 434 U.S. 945 (1977)...................................13

*Robbins v. Reagan*, 780 F.2d 37 (D.C. Cir. 1985)......................................................3

**Statutes**

5 U.S.C. § 706.................................................................................................1

8 U.S.C. § 1182(d)(2) ........................................................................................7

**Federal Rules**

90 Fed. Reg. 18759.....................................................................................4

90 Fed. Reg. 46512.....................................................................................5

90 Fed. Reg. 46513.....................................................................................5

90 Fed. Reg. 46515.....................................................................................6

90 Fed. Reg. 46519...................................................................................12

90 Fed. Reg. 46520.....................................................................................6

**Executive Orders**

Executive Order 14159.................................................................................4

Executive Order 14286.................................................................................4

**Other Authorities**

*Driver Shortage Update 2021*, AMERICAN TRUCKING ASSOCIATIONS, INC. (Oct. 25, 2021) ........................................................................................12

Gagandeep Singh, *After Fatal Crash, Sikh Truck Drivers in the US Fear Backlash,* BBC NEWS, (Sept. 13, 2025)...................................................7, 9

Henna Kaur Kaushal, *Sikhs in America: "Perpetually Foreign, Automatically Suspect, and Potentially Terrorist,"* 108 Cal. L. Rev. Online (July 2020)...........................................................................7

Jaweed Kaleem*, Sikh drivers are transforming U.S. trucking, Take a ride along the Punjabi American highway*, L.A. Times (June 27, 2019)............................................................................7, 8

Luis Andres Henao*, A deadly crash, a divided nation: Why Sikh truckers are now in the crossfire,* SEATTLE TIMES (Sept. 5, 2025)................................................................................9

Nilesh Christopher, *California's Punjabi truckers say they're being harassed after deadly Florida wreck,* Los Angeles Times, (Sept. 12, 2025).....................................................................9, 11

Ravleen Kaur, *70-Hour Weeks, Taking Selfies for ICE: Life as a Migrant Trucker in California,* The Guardian (Sept. 26, 2022) ...................................................................................8

*U.S. Rears Its Ugly Side After Fatal Accident in Florida Involving Sikh Trucker,* THE FRESNO BEE, (Sept. 7, 2025) .......................................9

*Transactional Records Access Clearinghouse*, Immigration Court Quick Facts..........................................................................7

# GLOSSARY

APA         Administrative Procedure Act

CDL         Commercial Driver's License

CLP         Commercial Learner's Permit

DOT         Department of Transportation

FMCSA    Federal Motor Carrier Safety Administration

IFR         Interim Final Rule

# STATEMENT OF INTEREST[1]

**The Sikh Coalition** is a nonprofit and nonpartisan organization dedicated to ensuring that members of the Sikh community in America are able to practice their faith without fear of discrimination or backlash. It defends the civil rights and civil liberties of Sikhs by providing direct legal services and advocating for legislative change, educating the public about Sikhs and Sikhi, promoting local community empowerment, and fostering civic engagement amongst Sikh Americans. The organization also educates community members about their legally recognized free-exercise rights and works with public agencies and officials to implement policies that accommodate their sincerely held beliefs. The Sikh Coalition was originally founded as an effort to combat uninformed hate violence and discrimination against Sikh Americans after September 11, 2001. The Sikh Coalition has long stood for the legal rights of Sikh truckers, including by representing plaintiffs in landmark hiring discrimination legislation, fighting for clients' rights to maintain their articles of faith while working in the trucking industry, seeking justice for drivers who experience bias-motivated assault, producing accessible "know your rights resources" in Punjabi, and more.

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici curiae* certify that no person or entity, other than *amici*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part.

**Gurdwara Sahib of Stockton** is the nation's oldest Sikh institution. Founded in 1912, it represents a religious, political, social, and educational hub of the community, with deep ties to the state of California and the United States. A significant portion of the worshippers at Gurdwara Sahib of Stockton come from the trucking industry, and have felt the impact of Restoring Integrity to the Issuance of Non-Domiciled Commercial Driver Licenses (CDL) rule. The Gurdwara Sahib of Stockton is deeply troubled by the impact this rule has had and will continue to have on the Sikh community, including those who work in industries that are ancillary to trucking and the wider Sikh community. To that end, the Gurdwara has held regular community meetings with Sikh truck drivers who remain alarmed with safety and security on the road given these changes.

The **Jakara Movement** is a nonprofit 501(c)(3) grassroots community-building organization dedicated to empowering, educating, and organizing working-class Punjabi Sikhs and other marginalized communities. Its mission is to advance health, education, arts and culture, economic opportunity, and community power. Many Jakara members work in the trucking industry, which forms one of the organization's largest and most active membership bases.

The **Sikh American Legal Defense and Education Fund** (SALDEF) is a 501(c)(3) not for profit organization whose mission is to empower Sikh Americans by building dialogue, deepening understanding, promoting civic and political

participation, and upholding civil rights and religious freedom for all Americans. Sikh truckers are deeply connected to SALDEF's mission because they represent one of the most visible and vital segments of the Sikh American community and their daily experiences directly reflect the issues SALDEF works to address.

**UNITED SIKHS** is an international, New York based nonprofit organization whose mission is to protect the civil and human rights of individuals and communities, and especially the rights, safety, and dignity of members of the Sikh community. UNITED SIKHS' mission is to advocate for the equitable treatment of Sikhs in the United States and to ensure members of the Sikh community—including Sikh truck drivers and business owners—are not subjected to arbitrary and discriminatory policies, protected from bias and hate, and can continue contributing safely and fully to the American economy. UNITED SIKHS has a direct interest in this matter because the FMCSA Rule disproportionately harms Sikh truck drivers, who represent a significant portion of the U.S. trucking workforce.

**California Sikh Youth Alliance** (CSYA) is a grassroots community organization dedicated to advocacy, organizing, and youth development for the Sikh community in the United States. CSYA is dedicated to mobilizing and binding Californian Sikhs closer together while raising in-depth awareness for justice and human rights for all. Through this work, CSYA knows that the

California Sikh community members and truck drivers have been seriously impacted by the Restoring Integrity to the Issuance of Non-Domiciled Commercial Driver Licenses (CDL) rule.

**Umeed-Hope** is an Indiana-based, Sikh-led mutual aid organization that supports marginalized communities by addressing systemic injustices. Through their community-based work that includes immigrant truck drivers and their families, Umeed Hope is witnessing firsthand how the Interim Final Rule issued by the Federal Motor Carrier Safety Administration is jeopardizing the livelihoods, increasing economic vulnerability, and further marginalizing members of the Sikh community.

## PRELIMINARY STATEMENT

*Amici Curiae* are community based organizations that represent the needs and interests of the Sikh community in the United States. *Amici* submit this brief in support of Petitioners' motion seeking a stay of the interim final rule, 90 Fed. Reg. 46509 (Sept. 29, 2025) (the Rule) issued by Federal Motor Carrier Safety Administration (FMCSA) of the United States Department of Transportation (DOT), which categorically prevents entire classes of lawfully eligible and lawfully present immigrants from obtaining, maintaining, or renewing non-domicile commercial driver's licenses, solely based on their immigration status.

Sikh truck drivers and their communities are being directly impacted by the Rule. There are approximately 150,000 Sikh truck drivers in the United States; Sikh truck drivers, citizens and non-citizens both, constitute one-fifth of the entire Sikh population in the United States. Many Sikh immigrants in the United States arrived as asylum seekers, or remain in the process of seeking asylum. The Sikh community—like many other immigrant communities—has worked in the trucking industry for decades. Once lauded for their contributions to the American economy, Sikh truck drivers are now being vilified as a result of this Rule.

This Court should grant Petitioners' motion for a stay because the Rule is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). FMCSA's alleged rationale for the Rule—to enhance the safety of commercial motor vehicle operations—is merely

a pretext to target immigrant truck drivers, like Sikhs, and force them out of the industry. There is no rational link between decreased safety on the roads and immigrant ("non-domiciled") CDL holders.

Concerningly, the Rule prohibits immigrants who are otherwise lawfully able to work from obtaining, maintaining, or renewing their CDL-driver's licenses regardless of their driving history, skills, knowledge, and other qualifications. By doing so, the Rule succeeds at perpetuating the myth that all immigrant drivers (regardless of their legal status) are unqualified or dangerous. This, in turn, inflames anti-immigrant bias towards immigrant truck drivers, especially Sikh drivers. The Rule further undermines the public interest because, by exacerbating the pre-existing truck driver shortage, the Rule makes our roads more dangerous.

Accordingly, this court should grant Petitioners' motion to stay the Rule.

## ARGUMENT

### I. Petitioners are likely to succeed on the merits of the APA claim because the Rule is arbitrary and capricious.

Under the Administrative Procedure Act, an agency's actions qualify as "arbitrary" or "capricious" if they are not "the product of reasoned decision-making." *Fox v. Clinton*, 684 F.3d 67, 74-75 (D.C. Cir. 2012). *Amici* agree with Petitioners that they are likely to succeed on the merits under the APA because FMCSA's asserted basis for the Rule—to enhance the safety of commercial motor

vehicle operations—reflects flawed decision-making.[1] Emergency Mot., 9-24, *Jorge Lujan v. FMCSA* (No. 25-1215); Emergency Mot., 16-21, *Martin Luther King, Jr. County v. Sean Duffy, et. al.* (No. 25-1224).

Additionally, a decision is typically deemed arbitrary and capricious if the agency considered an impermissible factor or relied on information Congress did not intend it to consider when making it. *See, e.g.*, *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Robbins v. Reagan*, 780 F.2d 37, 50 n.20 (D.C. Cir. 1985) ("An agency decision prompted by personal animus would run afoul of the requirement that agencies act in a reasoned, nonarbitrary manner."). When an agency relies on impermissible factors such as race or nationality, courts have struck the rule for being arbitrary or capricious. *See, e.g., CASA, Inc. v. Noem*, 2025 WL 1907378, at *22 (D. MD. July 10, 2025) (holding that a goal to reduce the number of non-white immigrants would render an agency decision arbitrary and capricious).

---

[1] Specifically, *amici* agree that FMCSA failed to establish a rational link between decreased safety on the roads and immigrant non-domiciled CDL holders. Indeed, the five accidents that FMCSA relied on to enact the Rule account for an exceedingly small percentage of total fatal crashes per year. According to FMCSA data, there were approximately 5,000 fatal crashes involving large trucks every year for the past four years (5,150 fatal truck accidents in 2021, 5,294 in 2022, 4,582 in 2023, and 4,190 in 2024). *Crash Statistics Summary: National 2021-2025*, Dᴇᴘ'ᴛ ᴏғ Tʀᴀɴsᴘ., https://ai.fmcsa.dot.gov/CrashStatistics?tab=Summary&type=&report_id=1&crash_type_id=1&datasource_id=1&time_period_id=2&report_date=0&vehicle_type=2&state=NAT&domicile=ALL&measure_id=1&operation_id=null (last visited Oct. 27, 2025).

FMCSA should not be permitted to rely on these five crashes to demonstrate an untenable safety risk to the public.

The context surrounding the Rule's enactment, as well as FMCSA's rhetoric describing the need for the Rule, show that FMCSA was impermissibly motivated by anti-immigrant bias. The day President Trump took office, he issued Executive Order (EO) 14159, "Protecting the American People Against Invasion," which begins, "[o]ver the last 4 years, the prior administration invited, administered, and oversaw an unprecedented flood of illegal immigration into the United States," and alleged that noncitizens in the country unlawfully are "committing vile and heinous acts against innocent Americans." 90 Fed. Reg. 8443 (Jan. 29, 2025). This was followed shortly by EO 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers," which ordered the Secretary of Transportation to review "non-domiciled commercial driver's licenses issued by relevant State agencies to identify any unusual patterns . . . or other irregularities . . . ." 90 Fed. Reg. 18759 (April 28, 2025).

Then, in August, following a crash involving Harjinder Singh, a Sikh, non-domiciled CDL holder, the U.S. Department of Homeland Security (DHS) posted that it would "work with [DOT] to root out and prevent illegal aliens from obtaining these licenses from sanctuary jurisdictions that put American drivers and passengers in danger." DHS (@DHSgov), X (Aug. 20, 2025, at 6:20 AM), https://x.com/DHSgov/status/1958157078503030915. DHS then doubled down and used Singh's name and likeness on X (formerly Twitter) to villainize Sikh truck

4

drivers. DHS (@DHSgov), X (Oct. 8, 2025, at 12:00 PM), https://x.com/dhsgov/status/1976007319197712471?s=46&t=TtB-NjfkmOcriEtub1XBQQ.



Less than seven weeks after Singh's accident, FMCSA promulgated this Rule without notice or comment, relying on five specific accidents from 2025 (including Singh's), and attributing the crashes to the drivers' foreignness. *See* 90 Fed. Reg. 46512-46513 (Sept. 29, 2025). U.S. Secretary of Transportation Sean Duffy justified the need for the rule to account for "dangerous foreign drivers" who are a "direct threat to the safety of every family on the road." *See Trump's Transportation Secretary Sean P. Duffy Takes Emergency Action to Protect America's Roads, Restrict Non-Domiciled CDLs*, Dep't of Transp. (Sept. 26, 2025),

https://www.transportation.gov/briefing-room/trumps-transportation-secretary-sean-p-duffy-takes-emergency-action-protect-americas. The government leveraged this handful of accidents to offset and distract from the lack of any evidence of systemic risk. *See* 90 Fed. Reg. at 46515, 46520 (Sept. 29, 2025) ("[t]here is not sufficient evidence, derived from well-designed, rigorous, quantitative analyses, to reliably demonstrate a measurable empirical relationship between the nation of domicile for a CDL driver and safety outcomes in the United States . . . ."). Nor does the Rule provide evidence to justify singling out particular immigration statuses as a safety risk.

In sum, bias or animus towards the immigrant population is an impermissible factor for an agency to consider when enacting federal regulation. Because FMCSA was motivated by anti-immigrant bias when it implemented the Rule, the Rule is arbitrary and capricious.

## II.    The balance of equities and the public interest support staying the Rule to protect public safety.

The balance of equities and the public interest both favor granting a stay in this case. *See Nken v. Holder*, 556 U.S. 418, 443 (2009).

### A. *The Sikh trucker community has become the target of hateful discrimination as a result of the Rule*

The balance of equities and public interest are not being served when one community becomes the target of discriminatory actions and rhetoric. Many Sikh

immigrants arrived in the United States to seek asylum after fleeing religious and political persecution. Henna Kaur Kaushal, *Sikhs in America: "Perpetually Foreign, Automatically Suspect, and Potentially Terrorist,"* 108 Cal. L. Rev. Online (July 2020), https://www.californialawreview.org/online/sikhs-in-america#_ftn3. A significant number remain trapped in the asylum process because of the massive backlogs in the U.S. immigration system; over 2.2 million individuals still awaiting asylum hearings as of August 2025. *Transactional Records Access Clearinghouse*, Immigration Court Quick Facts, https://tracreports.org/immigration/quickfacts/eoir .html. Despite this uncertainty, many Sikhs have found stability through work, particularly in the trucking industry. *See* 8 U.S.C. § 1182(d)(2) (providing for employment authorization for asylum applicants).

Punjabi Sikhs first began entering the U.S. trucking industry in large numbers during the 1980s. *See* Jaweed Kaleem*, Sikh drivers are transforming U.S. trucking, Take a ride along the Punjabi American highway*, L.A. Times (June 27, 2019), https://www.latimes.com/nation/la-na-col1-sikh-truckers-20190627-htmlstory.html. Trucking has since become a prominent part of the Sikh-American identity; not only do Sikh truck drivers constitute one-fifth of the country's entire Sikh population, but Sikhs have also established trucking companies, trucking associations, and related businesses (like truck washes). *See* Gagandeep Singh, *After Fatal Crash, Sikh Truck Drivers in the US Fear Backlash,* BBC NEWS (Sept. 13, 2025),

https://www.bbc.com/news/articles/cy4rmymrl2ro; Kaleem. Notably, as the nation continues to face a critical shortage of truck drivers, Sikh truckers have assisted in filling this gap. *Id.*

Consider, for example*,* Gurpreet Singh, a Punjabi Sikh asylum seeker who was detained for months after entering the United States in 2018 before being released on bond to await an asylum hearing that remained unresolved until at least 2022. Ravleen Kaur, *70-Hour Weeks, Taking Selfies for ICE: Life as a Migrant Trucker in California*, The Guardian (Sept. 26, 2022), https://www.theguardian.com/us-news/2022/sep/26/us-immigration-truckers-punjabi-california. Despite his legal limbo, Gurpreet became a trucker driver and worked up to 70 hours a week transporting goods across the country, thereby doing his best to help address the nationwide trucker shortage. *Id.* Gurpreet's story reflects the experience of thousands of Sikh immigrants who, despite enduring long and stressful immigration proceedings, have nonetheless become a vital part of America's workforce and made significant contributions to the U.S. economy. *See* Kaleem.

In line with their deeply held religious beliefs, many Sikh truckers maintain highly visible articles of faith that are easy targets for bias and hate. Among the most visible articles of faith is *kesh*, or unshorn hair, which is commonly accompanied by

a turban or patka, which serves to maintain the sanctity of unshorn hair and publicly affirms the wearer's Sikh identity.

Following FMCSA's enactment of the Rule, Sikh truck drivers have faced a surge in harassment throughout their routes. People have thrown objects like water bottles at Sikh trucks and have called Sikh drivers slurs like "diaper head" and "towel-head," forcing business owners to implement stricter security measures to protect their drivers. *See U.S. Rears Its Ugly Side After Fatal Accident in Florida Involving Sikh Trucker,* THE FRESNO BEE (Sept. 7, 2025), https://www.fresnobee.com/opinion/editorials/article311993510.html; *see also* Singh. One Sikh trucker described hearing comments like, "[t]ake the towel heads off the streets," and "[m]ake our roads safe by taking immigrants off the streets." Luis Andres Henao, *A deadly crash, a divided nation: Why Sikh truckers are now in the crossfire,* SEATTLE TIMES (Sept. 5, 2025), https://www.seattletimes.com/business/sikh-truckers-see-spike-in-anti-immigrant-vitriol-after-deadly-florida-crash/. Truckers' complaints are often dismissed or ignored by law enforcement, leaving them vulnerable and without any recourse. *See* Singh. Indeed, rather than helping them, law enforcement has subjected Sikh drivers to heightened scrutiny regarding their immigration status. *See* THE FRESNO BEE. Concerningly, some Sikh drivers have stopped driving because they fear for their safety. *See* Nilesh Christopher,

*California's Punjabi truckers say they're being harassed after deadly Florida wreck*, LOS ANGELES TIMES (Sept. 12, 2025), https://www.latimes.com/business/story/2025 -09-12/punjabi-truckers-feel-targetted-by-tariff-and-crackdown-after-accident.

Even when Sikh truckers are not on the road, they are being targeted online. There has been a surge in xenophobic posts and misinformation on social media platforms. For example, there are entire Facebook pages, with thousands of subscribers, devoted to spreading harmful narratives like: Sikh truck drivers are obtaining CDLs without merit, and Sikhs are responsible for causing trucking accidents.

And drivers are not the only ones being targeted: Sikh leaders in the industry have reported receiving an influx of hate emails following the implementation of the Rule. These emails include harmful statements like, "stop playing the race card, you came into the trucking industry uninvited so now ICE, HSI, and FMSCA will be looking at all non-US citizens," and the following:

> You people need to get out of trucking and go back to your shithole country altogether. I'm a trucker and every time I see one of your trucks and drivers I report you to DOT . . . Your drivers . . . have zero intelligence and are killing people all over the country. It is my mission to ruin you and every driver you have until your completely off American highways. [You're] disgusting and criminals.

These hateful messages clearly signal that Sikh truckers are under attack, both professionally and socially following the Rule's enactment.

Other Sikh industry actors have also been forced to contend with the Rule's inequitable repercussions; trucking business owners like Baldev Khang have stated that "this is the toughest period in decades for the business." *See* Christopher. Khang operates 1,000 trucks for major clients such as Walmart and Amazon, and reported that multiple Sikh drivers quit from fear of being targeted, even though the drivers had valid work permits. *Id.*

Notably, on October 27, 2025, Assistant Attorney General for Civil Rights at the U.S. Department of Justice, Harmeet K. Dhillon, acknowledged that Sikh and Indian-origin truckers are being targeted "because of who they are." Harmeet Dhillon (@AAGDhillon), X (Oct. 27, 2025, at 11:23 AM), https://x.com/aagdhillon/status/1982875887600013333?s=46. Dhillon asked the public "to act with reason," and reminded all that it "is illegal under federal law to discriminate against individuals or attack or violently threaten them because of their race, color, religion, or national origin."

The Rule has spread fear throughout the Sikh trucker community, effectively undermining the drivers' sense of safety and belonging, despite many having contributed to the profession for decades. These calamitous consequences demonstrate that the balance of equities and public interest weigh in favor of staying the Rule.

B. *The Rule will likely make the roads less safe because of the persistent shortage of drivers in the market*

Despite FMCSA's alleged concern for road safety, it failed to consider how the Rule could make roads increasingly unsafe. According to FMCSA's own calculations, the Rule would force approximately *ninety-seven percent* of current non-domiciled CDL holders to lose their licenses over the next two years. 90 Fed. Reg. 46519 (Sept. 29, 2025). That means approximately 194,000 people will be impacted by a policy that FMCSA enacted without any meaningful research or analysis. *Id.*

And despite FMCSA's statutory mandate to ensure the safe operations of commercial motor vehicles, it failed to consider how such a mass exodus could make roads increasingly *unsafe*. For years, the trucking workforce has faced a persistent shortage of truck drivers. In 2021, the American Trucking Association estimated an industry shortfall of greater than 80,000 drivers, and forecasted a persistent shortage that is expected to grow to 162,000 drivers by 2030. *Driver Shortage Update 2021*, AMERICAN TRUCKING ASSOCIATIONS, INC. (Oct. 25, 2021), https://www.trucking.org /sites/default/files/2021-10/ATA%20Driver%20Shortage%20Report%202021%20 Executive%20Summary.FINAL_.pdf.

Forcing approximately 200,000 drivers from the market will severely exacerbate that shortage. Since the Rule's implementation, drivers have already reported to *amici* that they are being forced to take additional routes because of

increased driver shortages, leading to increased driver fatigue and pressure to meet tight deadlines. This unfortunate consequence demonstrates that the balance of equities and the public interest would be served by staying the Rule. *See Oregon State Penitentiary v. Hammer*, 434 U.S. 945, 946 (1977) (there is an "important public interest in safety on the roads and highways").

## <u>CONCLUSION</u>

For the foregoing reasons, *amici* respectfully request that this court grant Petitioners' motion for an emergency stay.

Respectfully submitted,

Dated: October 29, 2025

/s/ Sahel K. Sra
Sahel K. Sra
Munmeeth Kaur
The Sikh Coalition
165 Broadway, 23rd Floor
New York, NY 10006
Tel: (212) 655-3095
sahel@sikhcoalition.org
munmeeth@sikhcoalition.org

Katherine Zhao
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
Tel: (415) 896-1701
katherinez@asianlawcaucus.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this Brief of *Amici Curiae* complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), it contains 2,595 words.

I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font in Microsoft Word.

Respectfully submitted,

Dated: October 29, 2025                                      ___/s/ Sahel K. Sra___
                                                                       Sahel K. Sra
                                                                *Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2025, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system. I certify that the foregoing document is being served on this day to all counsel of record registered to receive a Notice of Electronic Filing generated by CM/ECF.

*/s/ Sahel K. Sra*
Sahel K. Sra
*Counsel for Amici Curiae*
